# FIFTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

———————————————

Case No. 5D2023-2688
LT Case No. 2022-CF-0904

———————————————

COOPER MICHAEL SAULS,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

———————————————

On appeal from the Circuit Court for St. Johns County.
R. Lee Smith, Judge.

Clyde M. Taylor, III, of Taylor & Waldrop, St. Augustine, for
Appellant.

James Uthmeier, Attorney General, Tallahassee and Mitchell E.
Sanders, Assistant Attorney General, Daytona Beach, for
Appellee.

April 4, 2025

WALLIS, J.

    Cooper Sauls appeals his conviction for sexual battery by a
person under 18 upon a person under 12, entered after a nolo
contendere plea. We have jurisdiction pursuant to Florida Rule of
Appellate Procedure 9.140(b)(2)(A)(ii)(c). Sauls argues that the
trial court deprived him of due process by failing to determine his

competency when he filed a suggestion of incompetency before entering his plea.  Although he acknowledges that he failed to preserve his appellate argument by not filing a motion to withdraw his plea in the trial court, he invites this court to extend the narrow exception to the preservation rule created in *State v. T.G.*, 800 So. 2d 204 (Fla. 2001), for juveniles who enter uncounseled pleas. Because Sauls, a juvenile at the time of his offense and his plea, was represented at all critical stages of the criminal process, including his plea, we decline his invitation and affirm his conviction.

## Procedural History

On May 13, 2022, fourteen-year-old Sauls was arrested for committing sexual battery upon his severely disabled, non-verbal, wheelchair bound, seven-year-old stepsister, S.V.G.  In committing this act, Sauls caused S.V.G. severe pain, mental trauma, and physical injuries, which required surgery to repair.  In addition to the horrendous nature of the crime and eyewitness and physical evidence tying him to the offense, Sauls made a full confession.

The following month, the State filed a Notice of Transfer to Adult Court because Sauls was fourteen years old at the time of the offense "and in the State Attorney's judgment and discretion, the public interest requires that adult sanctions be considered or imposed . . . ."  The State also filed an Information in adult court charging Sauls with sexual battery by a person under eighteen upon a person less than twelve.  The court ordered that Sauls be transported to county jail to await trial without bond.

On June 30, 2022, Sauls' attorney filed a Suggestion of Mental Incompetence to Stand Trial (Age/Immaturity) ("Suggestion of Incompetency" or "Suggestion"), alleging that:  (1) Sauls could not aid in preparing his defense; (2) Sauls did not appear to appreciate the nature of the charges or the range and nature of the possible penalties; (3) Sauls had previously been evaluated for mental health issues; and (4) Dr. April Young had conducted a confidential psychosexual evaluation of Sauls and had opined that Sauls "may not be mentally competent to stand trial" based on his age and lack of maturity.  Dr. Young's report was not attached to the Suggestion of Incompetency.

Although Sauls' attorney filed the Suggestion of Incompetency in the clerk's office, nothing in the record suggests that the attorney or the clerk's office sent the Suggestion directly to the judge, the attorney noticed the Suggestion for a hearing, or the Suggestion otherwise was brought to the judge's attention. The court took no action on the Suggestion.

Less than one month later, on July 27, 2022, Sauls' attorney filed a Notice of Withdrawal of Suggestion of Mental Incompetence to Stand Trial, without elaboration. Once again, the record contains no indication that the Notice of Withdrawal was brought to the judge's attention.

In March 2023, Sauls entered an open no contest plea to the charge. Sauls signed a written plea form stating, *inter alia*, that: (1) he wanted to enter an open nolo contendere plea to the charged offense; (2) he had ten years of education and could read, write, and understand English; (3) he understood every word on the plea form and had discussed it with his attorney; (4) he understood he was waiving numerous rights, including the right to a trial and an appeal; and (5) he was entering the plea freely and voluntarily, without any promises, pressure, coercion, or force. In addition, Sauls' attorney certified, in part, that "In my professional opinion, as an officer of the court, Defendant understands everything in this plea form, his/her rights, and the consequences of this . . . plea[]. His/her plea is being made freely, voluntarily, and knowingly."

At the plea hearing, the trial court conducted a full plea colloquy during which Sauls reiterated the points made on the plea form. The hearing was conducted in the presence of Sauls' parents and grandparents, and with the participation of his attorney and the prosecutor. There was no indication that Sauls was entering the plea against the advice of his counsel or his parents.

In anticipation of sentencing, the defense filed several exhibits, including Dr. Young's 2022 Psychosexual Evaluation Report. The report covered several topics not relevant here. Regarding Sauls' competency to stand trial, Dr. Young stated that Sauls' mental status examination revealed "no serious mental

3

status abnormalities" and his cognitive function was age appropriate. Later in the report, however, Dr. Young recommended performing a competency evaluation on Sauls, stating:

> While Cooper accepts full responsibility for his actions, his cognitive faculties do not demonstrate that he grasps the magnitude of his actions. A competency evaluation would be critical to assess whether or not Cooper meets the standards of adult competency. At this time, it is not apparent that Cooper is demonstrating the competency of a neurotypical fourteen-year-old boy.

At sentencing, the court heard extensive expert and lay witness testimony from the State and Defense. Of relevance here, during defense counsel's cross examination of the investigating officer, the officer testified that he never questioned Sauls' mental status during their interview. Defense counsel responded for clarification that "we did have him evaluated and he was . . . competent to proceed."

During defense counsel's direct examination of Dr. Young about her psychosexual evaluation of Sauls, Dr. Young very briefly alluded to her prior concerns about Sauls' competency. During closing argument, defense counsel reiterated, "As the Court's aware, we had him evaluated for competency. He's competent."

The defense sought juvenile sanctions while the State sought twenty-five years in prison. Sauls' scoresheet range, which included points for serious injury, was between 138 months and life in prison. After hearing testimony and argument from both sides, the court decided to take more time to digest the information presented. At a continuation of the hearing, the court announced its decision. The court rejected juvenile sanctions and a downward departure sentence but sentenced Sauls to the lowest permissible sentence under his scoresheet, to 138 months in the Department of Corrections followed by 10 years of sex offender probation. The court also ordered (requested) that Sauls remain at the Department of Juvenile Justice until he turned twenty-one.

4

## Preservation Analysis

Florida Rule of Appellate Procedure 9.140(b)(2)(A)(ii)(c) permits a defendant to appeal from a nolo contendere plea, based on an involuntary plea "if preserved by a motion to withdraw plea." In *State v. Dortch*, 317 So. 3d 1074, 1084 (Fla. 2021), the Florida Supreme Court held that "there is no fundamental-error exception to the preservation requirement" in this rule.

Sauls argues the trial court erred by failing to order a competency hearing after his attorney filed the Suggestion of Incompetency. He acknowledges that he failed to preserve this argument for appeal because he did not file a motion to withdraw his plea but asserts that the error here was fundamental under the narrow exception for unrepresented juveniles established in *T.G.* This exception does not apply for the following reasons.

First, by its plain terms, the fundamental error exception in *T.G.* does not apply to Sauls. In 1979, the supreme court stated in *Robinson v. State*, 373 So. 2d 898, 902 (Fla. 1979), that before a defendant could challenge the voluntariness of a guilty or no contest plea on direct appeal, the defendant should first raise that issue with the trial court in a motion to withdraw plea. In 2001, the court in *T.G.* recognized a "narrowly drawn and extremely limited exception" to the preservation requirement "when juveniles enter uncounseled pleas where the trial court failed to comply with the requirements of [the rule of juvenile procedure pertaining to waiver of counsel]." 800 So. 2d at 213. The court recognized this narrow exception based on a "unique concern for juveniles who enter pleas without the benefit of counsel[.]" *Id.* However, the court emphasized that "in all other cases involving a challenge to the voluntariness of the plea," the preservation requirement should apply. *Id.* Neither the "extremely limited exception" for juveniles entering uncounseled pleas without valid waivers of counsel, nor the reason for that exception—"a unique concern for juveniles who enter pleas without the benefit of counsel"—apply in this case because Sauls was represented by counsel when he entered his plea and never sought to waive his right to counsel.

5

Indeed, subsequent to *T.G.*, in 2021, the supreme court rejected a defendant's reliance on *T.G.*, finding it "easily distinguishable" in part because the defendant was represented by counsel when he entered his plea. *Dortch*, 317 So. 3d at 1083. Tellingly, after the State emphasized this critical distinction in its answer brief, Sauls effectively concedes that the exception in *T.G.* does not apply to him by arguing in his reply brief that it "should be extended to any juvenile with questionable competency[,]" whether the juvenile was represented or not when entering a plea. Accepting this invitation to extend the law would require us to ignore both *T.G.* and *Dortch*, which we cannot do.

The court in *Dortch* also distinguished *T.G.* because *T.G.* "did not consider the statutory limitations on our authority in this area" imposed by section 924.051(4) and (8), Florida Statutes (1996), which state:

> (4) If a defendant pleads nolo contendere without expressly reserving the right to appeal a legally dispositive issue, or if a defendant pleads guilty without expressly reserving the right to appeal a legally dispositive issue, the defendant may not appeal the judgment or sentence.
>
> . . . .
>
> (8) It is the intent of the Legislature that all terms and conditions of direct appeal and collateral review be strictly enforced, including the application of procedural bars, to ensure that all claims of error are raised and resolved at the first opportunity. It is also the Legislature's intent that all procedural bars to direct appeal and collateral review be fully enforced by the courts of this state.

*Dortch*, 317 So. 3d at 1077–78, 1082–83 (quoting section 924.051(4) and (8)). The court explained that in response to this statute, the supreme court amended Rule 9.140 to codify section 924.051(4), but with the additions of the four exceptions it had previously

6

recognized in *Robinson*.[1]  *Id.* at 1078.  After the legislature adopted section 924.051(4) in the Criminal Appeal Reform Act of 1996, the supreme court amended Rule 9.140 to expressly codify the limited right to appeal after a guilty or nolo contendere plea recognized in *Robinson*.  This included the right to appeal "an involuntary plea, if preserved by a motion to withdraw plea[.]"  *Amends. to the Fla. Rules of App. Proc.*, 696 So. 2d 1103, 1130 (Fla. 1996).  The court also adopted  Florida Rule of Criminal Procedure 3.170(*l*), "which authorizes the filing of a motion to withdraw the plea after sentencing within thirty days from the rendition of the sentence, but only upon the grounds recognized by *Robinson* or otherwise provided by law."  *Dortch*, 317 So. 3d at 1078 (quoting *Amends. to the Fla. Rules of App. Proc.*, 696 So. 2d at 1105).  Later in the opinion, when rejecting a fundamental error exception to the preservation requirement, the court emphasized that the preservation requirement came from *Robinson*, and it

---

[1] *Robinson* upheld the constitutionality of section 924.06(3), Florida Statutes (1977), which stated that a "defendant who pleads guilty or nolo contendere with no express reservation of the right to appeal shall have no right to a direct appeal."  373 So 2d at 902. In doing so, the supreme court stated that this statute foreclosed appeals from matters preceding a plea, but not certain limited matters contemporaneous or subsequent to the plea.  As to those matters, the court limited the right to direct appeal "only the following: (1) the subject matter jurisdiction, (2) the illegality of the sentence, (3) the failure of the government to abide by the plea agreement, and (4) the voluntary and intelligent character of the plea."  *State v. Dortch*, 317 So. 3d 1074, 1077 (Fla. 2021) (quoting *Robinson*, 373 So. 2d at 902).  As to the voluntariness of a plea, however, the court added, "If the record raises issues concerning the voluntary or intelligent character of the plea, that issue should first be presented to the trial court in accordance with the law and standards pertaining to motions to withdraw a plea." *Id.* (quoting *Robinson*, 373 So. 2d at 902).  In other words,  *Robinson* "determined that the state constitutional right to appeal does not include the right to appeal an involuntary plea without first filing a motion to withdraw plea." *Id.*

subsequently "held that the 1996 Act itself codified existing law as embodied in *Robinson*." *Id*. at 1082 (citing *Leonard v. State*, 760 So. 2d 114, 116–17 (Fla. 2000)). The court concluded, "Having committed ourselves to the position that the Legislature adopted the 1996 Act against the backdrop of *Robinson*, and indeed that the 1996 Act incorporates *Robinson*, we cannot pick and choose which aspects of *Robinson* to follow. We must honor the legislative mandate." *Id*. Although Sauls ignores these legislative limitations, this Court is no less bound by them.

In addition to ignoring the supreme court's distinction of *T.G.* in *Dortch*, Sauls also ignores its criticism of *T.G.* After distinguishing *T.G.*, the court added the following criticism of *T.G.*:

> But on an even more basic level, without receding from *T.G.*, we reject its approach to creating ad hoc exceptions to rule 9.140(b)(2)(A)(ii)(c). Dortch's appeal—and the Fourth District's decision—prove that no matter how emphatically a court stresses that its reasoning is good-for-one-case-only, every exception begets demands for more. We think it best to follow the text of rule 9.140(b)(2)(A)(ii)(c) and to heed our own admonition from *T.G.*

*Dortch*, 317 So. 3d at 1083.

Finally, Sauls argues that fundamental fairness, the Sixth and Fourteenth Amendments to the United States Constitution, and the right to a meaningful appeal under article V, section 4(b) of the Florida Constitution, require this Court to review the merits of his involuntary plea argument on direct appeal. However, these arguments were raised by Justice Lawson in dissent in *Dortch* and they did not carry the day. Moreover, neither due process nor the right to appeal give a represented criminal defendant the right to "stand mute in the face of obvious procedural irregularities at a sentencing hearing secure in the knowledge that if he or she is dissatisfied with the resulting sentence, he or she could resurrect objections to those procedural deficiencies" for the first time on direct appeal. *Beasley v. State*, 971 So. 2d 228, 232 (Fla. 4th DCA 2008) (discussing Rule 3.800(b)(2), not direct appeal). As Justice Quince noted in *T.G.*, the preservation requirement "prohibits

8

counsel from attempting to gain a tactical advantage by allowing unknown errors to go undetected and then seeking a second trial if the first decision is adverse to the client." *T.G.*, 800 So. 2d at 210 (quoting *J.B. v. State,* 705 So. 2d 1376, 1378 (Fla. 1998)). "A defendant simply cannot allow error to occur without objection, hope they will win despite the error, and be confident of a new trial when the trial court has not been afforded the opportunity to cure it." *Brown v. State*, 263 So. 3d 48, 54 (Fla. 4th DCA 2018).

For these reasons, we decline to apply or extend the fundamental error exception in *T.G.* to Sauls' appeal.[2]

AFFIRMED.

---

[2] If the exception in *T.G.* had permitted review in this case, Sauls would have faced an additional problem similar to lack of preservation, which would have precluded reversal. Under the fundamental error standard, *Sauls* "must not only show error, but error that is fundamental." *Fike v. State*, 4 So. 3d 734, 737 (Fla. 5th DCA 2009). Sauls cannot demonstrate that the trial court erred in failing to determine competency without first showing that the competency issue was brought to the trial court's attention. As explained in *Clark v. State*, 908 So. 2d 597, 598 (Fla. 4th DCA 2005), merely filing a document in the court file does not ensure that it will be brought to the attention of the court. Consequently, litigants must exercise the responsibility to bring the matter to the court's attention by sending the document directly to the judge, scheduling and noticing the matter for a hearing, or availing themselves of other available means to bring the matter to the court's attention. Unlike Rule 3.850, Rule 3.210 does not require the clerk's office to forward a motion or suggestion of incompetency to the judge. There is no indication from this record that either the Suggestion of Incompetency or the Withdrawal of Suggestion of Incompetency were sent to the judge, noticed for hearing, or otherwise brought to the judge's attention. Therefore, it cannot be said, on this record, that the judge erred by not setting a competency hearing.

PRATT, J., concur.

EISNAUGLE, J., concurring in result only with opinion.

---

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

---

EISNAUGLE, J., concurring in result only with opinion.

I agree that we must affirm Sauls' judgment and sentence pursuant to *State v. Dortch*, 317 So. 3d 1074, 1084 (Fla. 2021). I also agree that *State v. T.G.*, 800 So. 2d 204 (Fla. 2001) is easily distinguishable. However, I conclude that the other issues are not sufficiently argued in the initial brief. Therefore, I do not reach them. *See Lynn v. City of Ft. Lauderdale,* 81 So. 2d 511, 513 (Fla. 1955) ("It is elementary that when a decree of the trial court is brought here on appeal the duty rests upon the appealing party to make error clearly appear.").